# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

|  |  |
|---|---|
| ANDREW HOWARD, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> AETNA LIFE INSURANCE COMPANY, <br><br> Defendant. | Case No.: CV 22-01505-CJC (MRWx) <br><br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [Dkt. 60] |

## I.  INTRODUCTION

This case is the follow-on action to *Hendricks. v. Aetna Life Insurance Company*, Case No. 2:19-cv-6840-CJC (MRWx) (C.D. Cal) (the "Related Action"), in which this Court certified a class of Aetna members whose claims for lumbar artificial disc replacement surgery ("Lumbar ADR") were denied on "experimental and

investigational" grounds and whose claims are subject to abuse of discretion review. Plaintiff Andrew Howard challenges the same practice challenged in *Hendricks*, namely, Aetna's wrongful practice of denying member claims for Lumbar ADR on "experimental and investigational" grounds. (*See* Dkt. 1 [Compl.] ¶ 34.) He brings this putative class action on behalf of Aetna members whose claims for Lumbar ADR surgery were denied on these grounds and are subject to *de novo* review. (*See id*.) He alleges that he and class members were harmed as a result of Aetna's general policy of denying coverage requests for lumbar artificial disc replacement surgery because the surgery is "experimental or investigational." Now before the Court is Plaintiff's motion for class certification. (Dkt. 60.) For the following reasons, Plaintiff's motion is **GRANTED**.[1]

## II.  BACKGROUND

### A.  Aetna's Policy Regarding Lumbar ADR Coverage

Lumbar ADR involves replacing a diseased spinal disc with an artificial one. Traditionally, surgeons had recommended spinal fusion to treat degenerative lumbar disc disease, but Lumbar ADR has the potential for improved flexibility and mobility. (Compl. ¶¶ 8–9.) The FDA has approved at least three lumbar disc replacement products in the last two decades. (*See* Compl. ¶ 10; Dkt. 60-3 [App'x to Pl.'s Mot. for Class Cert.,

---

[1] Aetna objects to several of Plaintiff's exhibits and to Plaintiff's characterization of evidence. (*See* Dkt. 67.) To the extent that Aetna objects to Plaintiff's submitted evidence as overinclusive, going beyond what is cited in Plaintiff's brief, the Court has not reviewed or relied upon any parts of the record not referenced in the parties' briefing on this motion. As to Aetna's objections regarding Plaintiff's characterization of the evidence, the Court has conducted its own review of the evidence and has not relied upon Plaintiff's characterizations. The Court cautions Plaintiff, however, that it will not again consider citations to deposition testimony or similar evidence without proper citation to particular portions of that testimony, including line numbers. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774–75 (9th Cir. 2002) (Plaintiff "fails to cite the page *and line numbers* when referring to the deposition contained in Exhibit D. This defect alone warrants exclusion of the evidence.").

hereinafter "Pl.'s App'x"] Exs. 22–24)[2]; *Hill v. UnitedHealthcare Ins. Co.*, 2017 WL 7038128, at *1 (C.D. Cal. Mar. 21, 2017).

Aetna's contracts contain a standard exclusion for services or supplies that are "experimental or investigational." (Ex. 4 at 103.)  In relevant part, Aetna defines a "drug, device, procedure or treatment" as "experimental or investigational if ... [t]here is not enough outcome data available from controlled clinical trials published in the peer-reviewed literature to validate its safety and effectiveness for the illness or injury involved." (Ex. 1 at 64.)

Aetna has also developed internal Clinical Policy Bulletins ("CPB") to "make sure that similarly situated claimants are treated consistently[.]" (Ex. 6 at 191:1–16.)  Prior to 2013, Aetna covered Lumbar ADR when it determined the surgery was medically necessary. (Ex. 5 at 121:10–124:21, 125:1–126:3; Exs. 11– 13.)  In 2013, however, Aetna reversed its coverage position after conducting an analysis of the costs of providing Lumbar ADR.  (Ex. 5 at 126:4–127:9, 130:19–25.)  Aetna adopted CPB 0591, titled "Intervertebral Disc Prostheses."  (Ex. 14 at 387.)  CPB 0591 sets forth Aetna's coverage position on LADR and provides in pertinent part: "Aetna considers lumbar prosthetic intervertebral discs (e.g., the Charité Artificial Disc, and the ProDisc-L Total Disc Replacement) experimental and investigational for lumbosacral degenerative disc disease and for all other indications."  (*Id.*)  All subsequent versions of CPB 0591 Aetna adopted through February 8, 2023 uniformly stated that Lumbar ADR was "experimental and investigational" and therefore not covered.  (Ex. 5 at 126:4–127:9; *see also* Exs. 14–18, Ex. 29 at 861:3–10, 878:14–881:13; Exs. 30–31); Related Action, Dkt. 136 at 1, 16.

---

[2] Unless otherwise indicated, all citations to numbered exhibits are to Plaintiff's appendix of exhibits (Dkt. 60-3), and all citations to exhibits identified with letters are to Aetna's appendix of exhibits (Dkt. 65-4 [Def.'s App'x]).

The "primary basis" for the experimental designation in CPB 0591 is the purported lack of clinical data "published in peer-reviewed literature to substantiate [Lumbar ADR's] safety and effectiveness[.]" (Ex. 5 at 145:2–11.)  According to Aetna's Rule 30(b)(6) witness, CPB 0591 applied to bar coverage "in all circumstances," does "not have any medical necessity criteria," (*id.* at 131:10–18), and listed "no exceptions," (Ex. 7 at 241:25–242:24).  (*See also* Ex. 6 at 192:25–193:21; Ex. 8 at 269:4–270:3; Ex. 9 at 307:23–309:8; Ex. 29 at 889:18–890:1, 908:6–909:2.)  Substantial evidence indicates that reviewers denied nearly all Lumbar ADR claims, citing CPB 0591, which Aetna trained reviewers to apply uniformly.  (Ex. 6 at 184:24–185:4; Ex. 7 at 221:11–23, 241:25–242:24; Ex. 8 at 258:16–259:13, 263:17–25; Ex. 29 at 859:20–860:2, 863:10–19, 886:12–25.)

Aetna's training regarding CPB 0591 applied to claims brought under both Aetna's fully-insured plans and self-funded plans.  (*See* Ex. 6 at 187:7–22 [indicating that witness understood all Aetna policies to include "an exclusion for experimental or investigational services"].)  It also applied at each level of the claim review process.  (*See* Ex. 5 at 134:14–135:1, 138:18–139:4 [Aetna's 30(b)(6) witness stating that he could not recall "seeing an appeal where there was an overturn" of a prior denial of coverage or any instance through other "escalation" channels in which he "recommended [reviewers] overrule the CPB and cover" Lumbar ADR]; Ex. 7 at 243:10–245:25; Ex. 8 at 270:24–271:2, 275:20–277:10, 278:5–281:1; Ex. 29 at 886:12–25 ["And if Aetna has a clinical policy bulletin … regarding the requested procedure, you would apply [that] to a grievance appeal, as well as an initial determination; would that be correct? … [A:] Yes."].)  Effectively, therefore, Aetna "never covered" Lumbar ADR.  (Ex. 10 at 344:6–17 ["That means lumbar ADR is never covered? A: That's what it says."].)

## B.  Denial of Plaintiff's Lumbar ADR Claim

Plaintiff is covered by a fully-insured Aetna plan arranged through his employer. (*See* Dkt. 60-2 [Howard Decl.] ¶ 3.)  Plaintiff's plan offers precertification and predetermination processes.  Precertification is a preservice review and a mandatory prerequisite to coverage for certain procedures. (*See* Dkt. 65-3 [McDonough Decl.] ¶ 8.) When precertification is not required, providers and members may still ask Aetna to review services for coverage beforehand.  (McDonough Decl. ¶ 9.)  These optional reviews are called predeterminations. (*Id.*; Ex. 1 at 42.)  A predetermination may not be appealed under Plaintiff's plan.  In contrast, a preservice claim—defined in the plan as a claim "that involves services you have not yet received and which we will pay for only if we precertify them"—may be appealed.  (*Id.*)  A post-service claim is any claim seeking coverage for services the member has already received.  (*Id.*)  Under Plaintiff's plan, members must complete both levels of appeal before filing suit, with two exceptions: (1) where the member has an urgent claim or ongoing treatment, in which case the member may have the claim "reviewed internally and through the external review process at the same time," and (2) where Aetna "did not follow all of the claim determination and appeal requirements of the state." (*Id.* at 51–52.)

Plaintiff suffered from disc disease in his lumbar (lower) spine that caused him significant pain and immobility.  (*See* Howard Decl. ¶ 3.)  After medication and corrective exercises failed to mitigate his symptoms, Plaintiff consulted with a surgeon who recommended Lumbar ADR.  (*See id.* ¶¶ 5–6.)  At the time of his surgery, Plaintiff's plan required precertification for certain procedures, (*see* Ex. 1 at 41–43), but not Lumbar ADR. (McDonough Decl. ¶ 12.)

In October 2021, Plaintiff requested a predetermination for coverage of his Lumbar ADR procedure, but on November 10, 2021, per CPB 0591, Aetna denied his request on the ground that Lumbar ADR was experimental or investigational.  (*See* Howard Decl.

¶¶ 6–7; Ex. 2; Ex. 29 at 883:22–885:3, 887:2–890:1.)  Plaintiff and his treating physician appealed that decision (or to use Aetna's terminology, they requested a clinical re-review, (*see* Dkt. 65 [Opp'n to Class Cert., hereinafter *"Opp."*] at 4)), and on December 2, 2021, Aetna rejected the appeal and affirmed its denial of coverage for Plaintiff's Lumbar ADR surgery on the same basis pursuant to CPB 0591.  (*See* Howard Decl. ¶ 8; Ex. 3; Ex. 29 at 907:11–18.)  Because Aetna refused to cover his procedure, Plaintiff paid thousands of dollars out of his own pocket for the surgery.  (*See* Howard Decl. ¶ 9.)

Plaintiff then submitted to Aetna a post-service claim for reimbursement.  (*See* Ex. 44; Ex 29 at 913:12–915:25.)  On February 14, 2022, Aetna again denied his reimbursement request—on the same grounds, as far as Plaintiff could tell, as Aetna's initial denial.  (*See* Exs. 45–46; Ex. 29 at 917:7–918:19.)  Aetna indicates that the submitted "bill failed to include details necessary to adjudicate the claim, like the Common Procedural Terminology ('CPT') code(s) associated with each service, (*see* Opp. at 4), but the denial Plaintiff received does not contain any indication to that effect. As far as the Court can tell, that letter did not provide a clear reason for denial.  (*See* Ex. 46; Ex. 29 at 917:17–918:19 ["So I'm asking if you know why [Mr. Howard's post-service claim] was denied …?  A. … I can't tell from the [explanation of benefits], and I would assume that it's because the services were denied pre-service."].)

Aetna also conveys that its *internal* case summary "makes clear it denied the claim because the letter and bill Plaintiff submitted lacked information necessary to process it," (Opp. at 4), but that report indicates only that the claim was indeed processed "with default value procedure code[s]" since "code[s] were not indicated on the itemized bill …," (Ex. A at 3–4).  Plaintiff appealed again, (*see* Ex. 29 at 920:12–922:14), and Aetna again denied the appeal, this time clearly stating that it needed "an itemized breakdown of charges per provider."  (Ex. 46 at 1203.)  In the series of documents including that denial letter, Aetna also wrote, "If you disagree with this decision, you may request a

second-level appeal" and attached a form for that purpose.  (*Id.* at 1204; *see id.* at 1211–12.)  Plaintiff never submitted that appeal form.  (*See* Dkt. 65-1 [Sparks Decl.] ¶¶ 4–5.)

However, Aetna did not indicate that if Plaintiff had provided the correct CPT codes, it would have changed its decision not to cover a claim which had already been denied several times.  (*See id.*)  Aetna's 30(b)(6) witness admitted he did not know why Aetna denied Plaintiff's appeal but conceded that based on Plaintiff's submitted medical records, Aetna would have denied the appeal under CPB 0591.  (*See* Ex. 29 at 925:3–927:10 ["Is there anything in that document that would change your opinion, based on the CPB in effect at that time, that his request for the Active LADR was experimental and investigation? … [A:] No."].)

## C.    Procedural History

Like Plaintiff Andrew Howard here, the plaintiffs in the Related Action asserted claims under the Employee Retirement Income Security Act ("ERISA") for denial of plan benefits and clarification of rights and breach of fiduciary duty on behalf of "[a]ll persons covered under Aetna Plans, governed by ERISA . . . whose requests for lumbar [ADR] were denied . . . on the ground that lumbar [ADR] is experimental or investigational."  Related Action, Dkt. 55 [Third Am. Compl.] ¶ 55.  The *Hendricks* plaintiffs sought an injunction requiring Aetna to retract CPB 0591 because it "erroneously classifies claims for [Lumbar ADR] as experimental and investigational[.]"  *Id.* ¶ 84.  In June 2021, the Court granted the *Hendricks* plaintiffs' motion for class certification as to all members of the class whose claims were subject to abuse-of-discretion review.  *See Hendricks v. Aetna Life Ins. Co.*, 339 F.R.D. 143, 153 (C.D. Cal. 2021).  The Court noted that "[w]hen reviewing for abuse of discretion, a district court may review evidence outside the administrative record only in certain circumstances to determine the existence and effect of a potential conflict of interest …[, b]ut when a district court conducts *de novo* review, it may admit evidence outside of the administrative record to determine whether the

insurer's denial was proper." *Id.* at 149.  Because these differing "incentives could change the way [p]laintiffs approach their case in a manner that is not in the best interest of proposed class members whose claims are subject to de novo review, the Court conclude[d] that [p]laintiff's claims [were] not typical of all proposed class members." *Id.* at 150.  On March 4, 2022, Plaintiff Andrew Howard filed this putative class action on behalf of Aetna insureds who claims are subject to *de novo* review, such as those individuals who were not certified as part of the *Hendricks* class.  (*See* Dkt. 1.)

In June 2023, Aetna moved to decertify the *Hendricks* class.  *See* Related Action, Dkt. 136.  Aetna emphasized that as of "February 8, 2023, CPB 591 no longer state[d] that [Lumbar] ADR is generally considered experimental and investigational for all indications."  *Id.* at 4; (*see* McDonough Decl. ¶ 4).  "Under the February 8, 2023 changes to CPB 591, L-ADR surgeries are considered medically necessary when specified FDA-endorsed clinical criteria are met in an individual case."  Related Action, Dkt. 136 at 4; (*see* McDonough Decl. ¶ 5, Ex. A).  In that motion, Aetna argued that the Court's class certification order "can no longer stand because Aetna has now changed" its policy on Lumbar ADR "to provide coverage . . . based on accepted clinical criteria and an individualized review of each claimant's medical history," so "the alleged conduct that Plaintiffs sought to modify through injunctive relief no longer exists."  Related Action, Dkt. 136 at 17.  On July 25, 2023, the Court rejected Aetna's argument that its policy revision mooted the plaintiffs' request for an injunction based on the doctrine of voluntary cessation and denied Aetna's motion to decertify the *Hendricks* class. *Hendricks v. Aetna Life Ins. Co.*, 344 F.R.D. 237, 246 (C.D. Cal. 2023).

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 23, district courts have broad discretion to determine whether a class should be certified.  *Armstrong v. Davis*, 275 F.3d 849, 871

n.28 (9th Cir. 2001).  Rule 23 is not merely a pleading standard—a party seeking class certification must affirmatively demonstrate compliance with the Rule by proving the requirements in fact.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Under Rule 23(a), a class may be certified if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

To be certified, a class must also meet the standards of one of the subsections of Rule 23(b).  In this case, Plaintiff seeks certification under Rules 23(b)(1)(A), 23(b)(1)(B), and 23(b)(2).  (*See* Mot. at 19–21.)  Rule 23(b)(1)(A) allows certification "if prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."  Rule 23(b)(1)(B) allows certification "if prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."  And Rule 23(b)(2) allows certification "if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Plaintiff bears the burden of satisfying the requirements of Rule 23.  *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

## III.  DISCUSSION

Plaintiff seeks to certify a class of "[a]ll persons covered under Aetna Plans, governed by ERISA, self-funded or fully insured, whose requests for lumbar artificial disc replacement surgery were denied at any time from March 4, 2019 to February 8, 2023, on the ground that lumbar artificial disc replacement surgery is experimental or investigational, and whose denials will be subject to de novo review by the district court." (Mot. at 1.)[3]  The Court previously certified (and denied a motion to decertify) the *Hendricks* class but excluded those putative class members whose claims were subject to a *de novo* (as opposed to abuse of discretion) standard of review.  *Hendricks*, 339 F.R.D. at 150 (C.D. Cal. 2021).  Plaintiff Howard's putative class is the same, except that it consists only of those insureds whose claims are subject to de novo review.  In other words, the excluded remainder of the *Hendricks* class makes this one.

The Court will certify this class.  The Court first dispenses with certain arguments Aetna makes against class certification, and then turns to the Rule 23 analysis.

## A.    Aetna's Arguments Against Class Certification

### 1.    Plaintiff's Narrowing of Class Definition

Aetna is incorrect that Plaintiff's motion should be denied because of the discrepancy between the class definition in his complaint and the class he seeks to certify here.  (*See* Opp. at 12.)  As Plaintiff highlights, the proposed class for certification is narrower than the one in the Complaint, (*compare* Mot. at 1 *with* Compl. ¶ 34), because it excludes individuals whose claims for Lumbar ADR were denied after February 8, 2023, when Aetna changed its policy.  "There is near-consensus that the plaintiff may narrow the class definition during the class certification process without seeking leave to

---

[3] The Court notes that the class definition on this first page of Plaintiff's motion does not match the class definition provided on page twelve of the motion, but it is clear from the substance of Plaintiff's briefing this is due to a copy/paste error.

amend."  1 McLaughlin on Class Actions § 4:2 (20th ed.) (October 2023); *see also*
*Hawkins v. Kroger Co.*, 337 F.R.D. 518, 526 (S.D. Cal. 2020) (leave to amend not
required where the change "narrows the number of members in the class"); *McCurley v.
Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 162 (S.D. Cal. 2019) ("A plaintiff may
properly narrow the class for which it seeks class certification even in a reply brief.").

## 2.    Plaintiff's Failure to Exhaust Administrative Remedies

Aetna argues that Plaintiff's claims should be dismissed for failure to exhaust
mandatory administrative remedies because he did not file the second-level appeal form
included with Aetna's last denial letter.  (*See* Opp. at 7; Ex. 46.)  Plaintiff argues that this
"Court has already evaluated and rejected Aetna's exhaustion defense[,]" and thus, Aetna
is collaterally estopped from raising it again now.  (*See* Dkt. 70 [Reply in Support of
Class Cert., hereinafter "Reply"] at 5.)  Plaintiff emphasizes that "Aetna presents no new
evidence to support its exhaustion argument, instead relying on the same evidence it
relied on in *Hendricks*."  (Reply at 3.)  The Court agrees that issue preclusion bars Aetna
argument here because the Court has already ruled that any appeals were futile—
"doomed to fail," *Diaz v. United Agr. Emp. Welfare Ben. Plan & Tr.*, 50 F.3d 1478, 1485
(9th Cir. 1995)—under Aetna's policy expressed in CPB 0591.  *See Hendricks v. Aetna
Life Ins. Co.*, 339 F.R.D. 143, 150 (C.D. Cal. 2021).

"[O]ffensive nonmutual issue preclusion …prevents 'a defendant from relitigating
the issues which a defendant previously litigated and lost against another plaintiff.'"
*Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007)
(quoting *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 329 (1979)).  "[O]ffensive
nonmutual issue preclusion is appropriate only if (1) there was a full and fair opportunity
to litigate the identical issue in the prior action; (2) the issue was actually litigated in the
prior action; (3) the issue was decided in a final judgment; and (4) the party against
whom issue preclusion is asserted was a party or in privity with a party to the prior

action." *Syverson*, 472 F.3d at 1078 (citations omitted).  "[T]rial courts [have] broad discretion to determine when [offensive collateral estoppel] should be applied." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979).

In *Hendricks*, there was full and fair opportunity to litigate this identical issue and indeed, it was actually litigated—twice.  The Court addressed this issue in 2021 when it certified the *Hendricks* class and in July 2023 when it denied Aetna's motion to decertify that class.  *See Hendricks*, 339 F.R.D. at 150*; Hendricks*, 344 F.R.D. at 242.  Each time the Court ruled that the plaintiffs' failure to exhaust administrative remedies did not bar certification.  In the first instance, the Court held that any appeals would have been futile in the face of Aetna's consistent policy and practice of denying Lumbar ADR claims.  *See Hendricks*, 339 F.R.D. at 150.  Then, in response to the Ninth Circuit's ruling in *Wit v. United Behav. Health*, 58 F.4th 1080, 1090 (9th Cir. 2023), *opinion vacated and superseded on reh'g*, 79 F.4th 1068 (9th Cir. 2023), which foreclosed the Court's initial ruling regarding futility, the Court held that Aetna anticipatorily repudiated its contractual obligations, relieving the plaintiffs of exhausting the contractually required administrative remedies.  *See Hendricks*, 344 F.R.D. at 242.

However, in August 2023, the Ninth Circuit granted a petition for rehearing of *Wit*, vacated its prior opinion, and issued a new opinion, replacing the January 2023 opinion upon which this Court relied.  Significantly, the Circuit changed its previous ruling that the underlying district court erred in applying the doctrine of futility to defeat the defendant's contractual exhaustion defense.  *See Wit v. United Behav. Health*, 79 F.4th 1068, 1089 (9th Cir. 2023) ("The district court further held that 'in any event, exhaustion is not required because it would have been futile.'  We decline to reach the merits of whether the district court erred in holding that the class members were excused from exhausting their claims.").  The latest *Wit* opinion therefore renders the Court's reasoning in its first *Hendricks* opinion applicable once again.

The Court's decision on the issue was final and was entered against Defendant Aetna. "[T]he proper query [in assessing finality] is whether the court's decision *on the issue as to which preclusion is sought* is final." *Syverson*, 472 F.3d at 1079. It was. In both cases, the issue was raised to defeat class certification and was resolved finally in that context. Here, it is also raised as a defense to class certification, so issue preclusion is particularly appropriate here given the issue is presented in the same procedural posture after a previous final decision against the same party.

In exercising discretion, courts also consider "whether (1) the plaintiff had the incentive to adopt a wait and see attitude in the hope that the first action by another plaintiff would result in a favorable judgment which might then be used against the losing defendant; (2) the defendant had the incentive to defend the first suit with full vigor, especially when future suits are not foreseeable; (3) one or more judgments entered before the one invoked as preclusive are inconsistent with the latter or each other, suggesting that reliance on a single adverse judgment would be unfair; and, (4) the defendant might be afforded procedural opportunities in the later action that were unavailable in the first and that could readily cause a different result." *Syverson*, 472 F.3d at 1079 (citing *Parklane*, 439 U.S. at 330–31) (quotation marks omitted).

None of these considerations weigh against issue preclusion here. Plaintiff would have been part of the *Hendricks* class had he and putative class members been able; there is no wait-and-see issue. Aetna—facing a significant class action—had ample incentive to defend itself with full vigor in *Hendricks*. Here, there are two judgments both finding against Aetna on this issue—albeit on different grounds. But the Court's differing decisions on this issue (with the same outcome) were the product of an intervening Ninth Circuit decision, which has now been vacated. Thus, though there are two judgments ruling against Aetna on different grounds, they are not inconsistent (and certainly not

inconsistent in terms of outcome). Finally, the procedural opportunities are the same here as in the *Hendricks* case, and Aetna relies on the same evidence as before. This is all particularly true given that this Court presides over both the *Hendricks* case and this one. Issue preclusion bars Aetna's relitigation of this issue here.[4]

### 3.   Aetna's Change in Policy

Aetna requests "[a]t minimum" that the proposed class "be limited to members who underwent [Lumbar ADR] during the class period" because "all prospective claims of the putative class are moot." (Opp. at 12.) As the Court previously held, Aetna's revision of its policy does not moot any claims here. "A case becomes moot . . . when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike*, 568 U.S. 85, 91 (2013) (cleaned up). "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to [its] old ways." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (cleaned up). "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 190.

Attempting to distinguish the circumstances now from when the Court previously decided this issue, Aetna cites its corporate representative's sworn declaration that Aetna "does not *currently intend* to change its *current* policy … that [Lumbar] ADR surgeries

---

[4] Even if issue preclusion were inappropriate here, the Court stands by and fully incorporates its reasoning for rejecting this defense as a bar to class certification in its prior *Hendricks* opinions. *Hendricks v. Aetna Life Ins. Co.*, 339 F.R.D. 143 (C.D. Cal. 2021); *Hendricks v. Aetna Life Ins. Co.*, 344 F.R.D. 237 (C.D. Cal. 2023) (holding that even under first *Wit* decision, anticipatory repudiation applied and produced same effect).

may be medically necessary, and therefore covered, where certain criteria are met—unless and until the CPC's review process determines that new evidence warrants a change." (McDonough Decl. ¶ 8 [emphasis added].) *Current* intent does not evidence future intent. It is still true that "[n]othing prevents Aetna from returning to its old ways," so the Court declines Aetna's request to narrow Plaintiff's class, notwithstanding Aetna's present change of heart. *Hendricks*, 344 F.R.D. at 246; *see, e.g.*, *FTC v. Affordable Media*, 179 F.3d 1228, 1237–38 (9th Cir. 1999) (holding that the defendants' voluntary cessation of allegedly fraudulent sales scheme did not moot FTC's request for an injunction).

Similarly, Aetna's argument that Plaintiff lacks standing to pursue prospective relief because he already had and paid out of pocket for Lumbar ADR is unpersuasive. (*See* Opp. at 17.) To obtain equitable relief for past wrongs, a plaintiff must demonstrate *either* a real and immediate threat of repeated injury in the future *or* "continuing harm." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (emphasis added); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … *if unaccompanied by any continuing, present adverse effects*.") (emphasis added). The Ninth Circuit regularly affirms district courts' rulings on standing when "the court has determined that the alleged threatened injury is sufficiently likely to occur …. [There are] two ways in which a plaintiff can demonstrate that such injury is likely to recur. First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury 'stems from' that policy. Second, the plaintiff may demonstrate that the harm is part of a pattern of officially sanctioned ... behavior, violative of the plaintiffs' … rights." *Mayfield v. United States*, 599 F.3d 964, 970–71 (9th Cir. 2010). Plaintiff's injury stems from Defendant's policy and was part of a pattern of behavior pursuant to that policy that violated his and class members' rights. What is more, Plaintiff suffers continuing and ongoing injury stemming from Aetna's alleged wrongful denial of his claim for Lumbar

ADR. Despite the fact that Aetna has changed its policy regarding approvals of Lumbar ADR as of February 2023 and has no current intention to change that policy, Plaintiff's claim has never been reprocessed. Nor has it reprocessed the proposed class members' denials. Aetna still has never given notice of its change in policy. (*See* Compl. ¶ 63.) And, as emphasized above, there is no guarantee that Aetna's the current policy will remain effective. Plaintiff has never been reimbursed for his significant out-of-pocket expenses for a necessary surgery, which allegedly should have been covered under his Aetna insurance policy, and thus has standing to pursue his claims.

## B.     Rule 23(a) Requirements

### 1.     Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, Plaintiffs must "demonstrate that the class members have suffered the same injury." *Dukes*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). This does not "mean merely that they have all suffered a violation of the same provision of law," but rather that the plaintiffs' claim depends on a "common contention" that is capable of class-wide resolution. *Id*. This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.; *Willis v. City of Seattle*, 943 F.3d 882, 885 (9th Cir. 2019) ("The commonality element may be fulfilled if the court can determine 'in one stroke' whether a single policy or practice which the proposed class members are all subject to 'expose[d] them to a substantial risk of harm.'").

Here, Plaintiff's claims depend on a question common to his proposed class that is capable of class-wide resolution. Plaintiff brings his claims on behalf of all Aetna

insureds "whose requests for lumbar artificial disc replacement surgery were denied . . . on the ground that lumbar [ADR] is experimental or investigational and whose denials will be subject to de novo review by the district court." (Mot. at 12; *see* Compl. ¶ 34.) Plaintiff asserts claims for clarification of rights and breach of fiduciary duty—seeking injunctive relief that Aetna cannot maintain a policy that classifies Lumbar ADR as experimental or investigational. As a result, Plaintiff's claims raise the common question of whether Lumbar ADR has been proven safe and effective for treating degenerative disc disease. If the answer is yes, then Aetna cannot deny and should not have denied requests for Lumbar ADR on the ground that it is experimental or investigational. Plaintiffs' proposed class action thus has the capacity "to generate common *answers* apt to drive the resolution of the litigation." *See Dukes*, 564 U.S. at 350; *see also Escalante v. California Physicians' Serv.*, 309 F.R.D. 612, 618 (C.D. Cal. 2015) (concluding that a common question existed as to whether "Defendant may classify FDA-approved procedures like lumbar ADR as 'experimental' or 'investigational'"); *Hill*, 2017 WL 7038128, at *9 ("[T]he Court finds that the question of whether a blanket policy of defining lumbar ADR as unproven is proper is common to the class.").

As it did in *Hendricks*, Aetna argues that the commonality requirement is not met because Aetna never categorically denied coverage for Lumbar ADR, and its medical directors can and do approve coverage for Lumbar ADR in their clinical judgment despite CPB 0591. "However, as Plaintiff[] point[s] out . . . , the proposed class consists only of patients whose claims were *denied*." *Des Roches v. California Physicians' Serv.*, 320 F.R.D. 486, 499 (N.D. Cal. 2017). Thus, the class does not include patients whose coverage determinations "were made because of a reviewer's discretion that departed from the standards set forth in [Aetna's CPB 0591] Guideline." *Id.*; *see Escalante*, 309 F.R.D. at 618 ("Although it may turn out that individual class members suffering from degenerative disc issues may not be covered after Defendant reviews [] any particular

individual's circumstances, this goes beyond the main issue of the case, which challenges Defendant's policy on its face, not Defendant's individualized coverage decisions.").

Moreover, while Aetna approved Lumbar ADR for a small portion of patients prior to its February 2023 change in policy, the evidence shows that Aetna's policy was to deny, without significant exception, coverage for Lumbar ADR because it classified it as "experimental and investigational."  (Ex. 14 at 387; *see* Ex. 6 at 196:23–197:6.)  Aetna's policy descriptions state that Aetna generally does not cover "experimental or investigational" services.  (Ex. 1 at 10.)  And Aetna's CPB 0591 states that Aetna considers Lumbar ADR "experimental or investigational."  (Ex. 14 at 387.)  Indeed, Aetna denied Plaintiff's predetermination request solely on the ground that Lumbar ADR was "experimental/investigational[.]"  (Ex. 2 at 83 ["This coverage denial was based on the terms of the member's benefit plan document . . .. The plan does not cover experimental or investigational services except under certain conditions."]; Ex. 3 at 94 [same]; *see* Howard Decl. ¶¶ 6–7; Ex. 29 at 887:2–889:1.)  Therefore, Plaintiff's claims depend on resolution of the same question as his proposed class's claims.  *See Hill*, 2017 WL 7038128, at *9 (finding commonality based on defendant's "standard practice [] to deny lumbar ADR [coverage] as unproven" even when defendant did not always deny coverage). [5]

### 2.   Typicality

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class.  "The requirement is permissive, such that representative claims are 'typical' if they are reasonably coextensive with those of absent

---

[5] As the Court addressed above, Aetna's exhaustion defense does not destroy commonality because all class members' exhaustion of any administrative remedies would have been futile, regardless of whether they proceeded with every step in the appeal or not.  The same reasoning applies class-wide and would not require individual determinations for each class member.

class members; they need not be substantially identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons*, 754 F.3d 685 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). The purpose of the typicality requirement is to "assure that the interest of the named representative aligns with the interests of the class." *Just Film*, 847 F.3d at 1116 (citing *Hanon*, 976 F.2d at 508).

Plaintiff and proposed class members have all suffered "the same or similar injury." *Escalante v. Blue Shield of California*, 309 F.R.D. 612, 619 (C.D. Cal. 2015). All their claims for coverage of Lumbar ADR surgery were denied on the grounds that the surgery was experimental or investigational. This common injury arises from Aetna's "uniform course of conduct," namely, its "medical policy of categorically excluding lumbar ADR procedures from coverage. *Id.* Thus, Plaintiff and the proposed class were all injured by the same course of conduct, and they all have an interest in resolving the central question raised in this action—whether Lumbar ADR has been proven safe and effective. Any failure of Howard or of any class members to fully exhaust administrative remedies is irrelevant, per the Court's discussion above. To the extent that Howard differs from other class members because he already got surgery and paid out of pocket for it, that difference only gives him more incentive to vigorously prosecute this case since he has expended significant resources without reimbursement. Despite Aetna's objections, Plaintiff's claims are typical of all proposed class members.

### 3. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no magic number required to satisfy

numerosity and courts must consider the facts of each specific case. *See In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing *Gen. Tel. Co. of Nw., Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)).  In general, however, courts have found that "classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough." *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1095 (C.D. Cal. 2015); *see Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602–03 (C.D. Cal. 2015).  Here, Plaintiff presents evidence that Aetna denied coverage for Lumbar ADR on "experimental or investigational" grounds to at least forty-three of its insureds whose denials would be subject to de novo review by this Court.  A class of this size satisfies the numerosity requirement, and since the Court has rejected Aetna's arguments to narrow Plaintiff's class definition, it makes no meaningful argument to the contrary.

### 4.   Adequacy

To satisfy the adequacy requirement, Plaintiff must show that he and his counsel will fairly and adequately represent the class.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  This requirement ensures that the constitutional protections of due process and full faith and credit are afforded to absent class members.  *Hansberry v. Lee*, 311 U.S. 32, 43 (1940).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.

The Court has no reason to doubt that Plaintiff and his counsel will prosecute the action vigorously on behalf of the class, and the Court is not aware of any evidence indicating that Plaintiff and his counsel have any conflicts of interest with other class

members.  Aetna contends that Plaintiffs are inadequate for the same reasons that they are not typical.  Just as the Court already determined that Plaintiff satisfies the commonality and typicality requirements, it concludes that Plaintiffs satisfies the adequacy requirement.

### C.    Rule 23(b) Requirements

Plaintiff seeks certification under Rules 23(b)(1)(A), 23(b)(1)(B), and 23(b)(2).  The Court certifies Plaintiff's class under each of these subsections.

Rule 23(b)(1)(A) allows certification "if prosecuting separate actions by . . . individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."  Fed. R. Civ. P. 23(b)(1)(A).  "This subsection covers actions where 'the party is obliged by law to treat the members of the class alike' or where 'the party must treat all alike as a matter of practical necessity.'"  *Hill*, 2017 WL 7038128, at *11 (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997)).  "[A] Rule 23(b)(1)(A) action is not appropriate for situations where separate actions would simply raise the same questions of law; [i]nstead, the 'incompatible standards of conduct' of subdivision (b)(1)(A) must be interpreted to be incompatible standards of conduct required of the defendant in fulfilling judgments in separate actions."  *Id.*

Plaintiff and class members are primarily seeking an "injunction requiring Aetna to retract [and/or not to reimplement] its CPB 0591 that erroneously classifies claims for L-ADR as experimental and investigational[.]"  (Compl. ¶ 63); *see Escalante*, 309 F.R.D. at 618 (concluding that plaintiff "primarily" sought injunctive relief even when he wanted defendant to review all denied claims and disgorge improper profits made from denial of those claims); *Hill*, 2017 WL 7038128, at *11 (same).  Plaintiff and class members also

seek reprocessing of their denied claims for Lumbar ADR.  Without class treatment of this issue, Aetna would be prejudiced because it could be subject to incompatible standards on how it needs to treat Lumbar ADR.  If granted, this relief would affect the rights of all class members because all class members had their "requests for lumbar [ADR] denied … on the ground that [it] is experimental or investigational."  (Compl. ¶ 34).  And Aetna would no longer be able to deny Lumbar ADR on experimental and investigational grounds for any of its insureds.

Aetna argues that Plaintiff's "purportedly equitable remedies are just claims for legal relief—the payment of money[,]" which is not proper under Rule 23(b)(1).  (Opp. at 19–20); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  But any monetary relief is incidental to class claims for injunctive and declaratory relief; reprocessing does not guarantee the payment of benefits.  This is because, "upon reprocessing [without application of the erroneous denial basis], the defendants may ultimately affirm their coverage denials for some putative class members, based on individualized considerations."  *Meidl v. Aetna, Inc.*, 2017 WL 1831916 at *11 (D. Conn. May 4, 2017) "The court reaffirms its earlier statement that a lawsuit 'involving the application of an ERISA-covered plan to a number of employees' is an example of 'the profile for certification under subsection (b)(1)(A).'").  The right preserved by the remedy of reprocessing is not the right to payment, but rather the right to an individualized review consistent with the terms of the plan.

Certification is also proper under Rule 23(b)(1)(B), which allows certification "if prosecuting separate actions by . . . individual class members would create a risk of adjudications . . . that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."  *See Hill*, 2017 WL 7038128, at *11.  Resolution of one question—whether Aetna improperly classified Lumbar ADR as experimental and investigational under CPB 0591—is outcome-determinative of each

-22-

class member's claims.  For this reason, an adverse ruling as to one class member's claims would impair other class members' ability to pursue their claims.  "ERISA requires that, 'where appropriate,' plan provisions must be 'applied consistently with respect to similarly situated claimants.'  29 C.F.R. § 2560.503–1(b)(5).  Thus, were this Court to find that [the class members' plans] require[ Aetna] to act in a certain fashion, ERISA would [in turn] require [Aetna] to act in a similar fashion toward all beneficiaries …."  *Z.D. ex rel. J.D. v. Grp. Health Co-op.*, 2012 WL 1977962, at *7 (W.D. Wash. June 1, 2012).  "And if another court were to interpret [Aetna's plans] differently, it would trap [Aetna] in the inescapable legal quagmire of not being able to comply with one such judgment without violating the terms of another."  *Id.*  In other words, if Aetna were to treat all similarly situated plaintiffs consistently as ERISA generally requires, Aetna could not honor conflicting obligations to different plaintiffs, even though their cases might reach different results.  This is "the quintessential (b)(1)(B) scenario[.]"  *Id.*

Finally, certification is proper under Rule 23(b)(2), which allows certification "if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  *See Escalante*, 309 F.R.D. at 620 (citing Fed. R. Civ. P. 23(b)(2)).  That is true here.  Aetna had a uniform policy of denying claims for Lumbar ADR on the ground that such surgery was experimental and investigational.  Requiring Aetna to retract or not reimplement its policy and to reprocess claims denied because of that policy will be appropriate for the class as a whole.  *See Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (The requirements of Rule 23(b)(2) are "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole.").

-23-

**V.  CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for class certification and hereby **CERTIFIES** the following class:

> All persons covered under Aetna Plans, governed by ERISA, self-funded or fully insured, whose requests for lumbar artificial disc replacement surgery were denied at any time from March 4, 2019 to February 8, 2023, on the ground that lumbar artificial disc replacement surgery is experimental or investigational, and whose denials will be subject to de novo review by the district court.

Plaintiff Andrew Howard is appointed as Class Representatives and his counsel, Gianelli & Morris, are appointed as Class Counsel.

DATED:     February 27, 2024

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE